UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

CLEON CLARKE,

Defendant.

No. 16-cr-781 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

On January 12, 2021, the Court received a *pro se* letter from Cleon Clarke, postmarked December 21, 2020, requesting compassionate release under 18 U.S.C. § 3582 (see attached).  IT IS HEREBY ORDERED THAT the government shall file a letter by January 21, 2021, setting forth its position on Clarke's request.  The Clerk of Court is respectfully directed to mail a copy of this order to Clarke.

SO ORDERED.

Dated:   January 15, 2021
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

Honorable Judge Richard J. Sullivan

Dear Judge: I am writing you with grave concern. My hope is to attain appointed Counsel so that I am afforded the opportunity at filing a 3582(c)(1)(a) motion in free of Compassionate release/ Sentence reduction. Your Honor as you are well aware of COVID-19 has ravaged this Country. The Institution that I am Currently housed in FCI Danbury Since the outburst of the pandemic has been deemed a "Hotspot" for the Virus. Due to its location approximately 30 minutes from NYC (The epicenter to which COVID-19 spread) this institution has suffered tremendously. Because of the way the Institution is arranged (Dormitory Style, bunk bed, and Community Showers, Stalls, etc) there is absolutely zero Chance to meet the CDC's Instructions to "Social distance" and or quarintine. The administrative here at Danbury F.C.I have failed miserably at Containing and or safe guarding the spread of this deadly Virus. A suit was filed in the federal Court against Warden D. Easter, to which this institution was found liable and given strict guidelines on how to run institution throughout these trying times. It is of serious Consequence that this institution Continues to neglect those guidelines.

Your honor in a matter of weeks the positive Cases has spiked to over 35 inmates, not including staff. Sir you sentenced me to 90 months, not a potential death sentence. Your honor it is my desperate hope that I was able to convey to you the stark danger my housing here presents. I am begging you to intervene Please and thank you have a bless day

(1)

Dear,

Judge Richard J. Sullivan

First and foremost I want to thank you for taking time out of your day to read this letter. I am writing out of an abundance of concern about the unprecedented circumstances that are happening with the COVID-19 outbreak affecting hundreds of inmate at FCI Danbury resulting in the death of several of these inmates as a result of this pandemic and it's rapidly growing pace within the federal prison system. Under the current circumstances and based on the directive from the Attorney General, I come before you to plead for your immediate action to place Cleon Clarke Inmate #78387-054 in home confinement status. According to 18 U.S.C Section 571.61 Initiation of request under extraordinary or compelling circumstances part (b) "The Bureau of Prisons Processes request made by another person on behalf of an inmate in the same manner as an inmate's request. Staff shall refer a request received at the Central office to the Warden of the institution where the inmate is confined". Therefore I am requesting for the Compassionate release of Cleon Clarke #78387054. I justify this request based on the following facts listed below and as a result of these extraordinary and compelling circumstances that could not have been reasonably foreseen by the Court at the time of sentencing. I think that you will find that the pandemic know as COVID-19 to both be extraordinary and an imminent threat to Cleon Clarke's life. Compelling, as he was not sentenced to death in confinement under the BOP, due to a lack of preparedness, medical neglect, and social distancing orders by the federal government resulting in the rapid spread of COVID-19 in the Bureau of Prisons federal institutions. As a result I plead for immediate consideration of inmate Cleon Clarke #78387054 to carry out the rest of his sentence in home confinement.

(2)

In regards to Cleon Clarke, this would allow him to continue out the remainder of his sentence of 36 months into home confinement as it is pleaded that this new law is exercised in its entirety to its maximum authority as broadly as possible, given that thousands of lives are at stake. On Friday, March 13, 2020 a National Emergency was declared by President D. Trump as a result of the COVID-19 outbreak in the United States. The CARES act, or the Coronavirus Aid, Relief, and Economic Security Act broadens the authority of the Attorney General and the Director of the BOP, during the COVID-19 crisis, to release prisoners to home confinement. Passed by the house Congress and signed into law by President D. Trump, as the Country was declared to be in a national Emergency as it pertains to the federal prison system, Section 12003(b)(2) provides that "(2) HOME CONFINEMENT AUTHORITY. During the Covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." This Revision to the CARE act has lifted the 10%/6-month limitation for home confinement. This allows the BOP to send anyone with anything short of a life sentence to home confinement right away. In regards to Cleon Clarke, this would allow him to continue out the remainder of his sentence with of 36 months into home confinement as it is pleaded that this new law is exercised in it's entirety to its maximum authority as broadly as possible, given that thousands of lives are at stake. As stated in an memorandum directed to the BOP on March 26, 2020, the BOP was issued to prioritize home confinement as an appropriate response to the

(3) COVID-19 pandemic as the memorandum greatly implied that the COVID-19 pandemic was and currently is still affecting the functioning of the BOP. Under Barr's emergency order, prioritized for releasing vulnerable inmates into home confinement and should be given first to those housed in federal prisons that have been hardest hit by COVID-19, including facilities such as Oakdale in Louisiana, Elkton in Ohio and Danbury (where Cleon Clarke is currently serving his sentence) in Connecticut after five inmates at FCI Oakdale, and two inmate at FCI Elkton died from COVID-19. I hear by declare that this law be carried out to its fullest extent on behalf of Cleon Clarke inmate #78387054 into home confinement for the remainder of his sentence in order to mitigate the spread of COVID-19.

Cleon Clarke (inmate #78387054), is a 30 year old male with a history of the sickle cell trait, high blood pressure, and recently having several medical episodes while in BOP custody, is seeking immediate release into home confinement where he can seek sufficient medical care that is currently being neglected for over a month. It can be proven for the last month that Cleon Clarke has put in several medical requests and dental requests and have had his medical needs blindly neglected by the Warden, Counselor, Case Managers, and medical team at FCI Danbury. While in Custody Cleon Clarke has already suffered from contracting and recovering from the virus and was recently put back into the same unite in which the virus is affecting several inmates currently. Cleon Clarke has since been denied medical treatment for debilitating headaches, chronic neck ear and dental pain, as well as other noted medically necessary needs in need of immediate action. This neglect goes against Cleon Clarke's 8th amendment rights that include "causing a delay in treatment

(4) in order to harm inmates". With the widespread of COVID-19 resulting in thousands of deaths world wide and within the BOP federal institutions, more specifically FCI Danbury, is ill equipped to prevent the transmission of COVID-19 among inmates and staff or to properly isolate and treat infected individuals that greatly puts his medical health and life at risk. The World Health Organization has also recently confirmed that more younger people and people without pre-existing conditions have been dieing from COVID-19 as the virus seem to be unstable and unpredictable. As reported by the CDC, "Although it was initially reported those most likely to die were elderly or those with underlying health issues... nearly 20 percent of severe cases were 20-44 years old in the U.S. The "dismissive attitude" that only old or the already sick people would have to worry about death or hospitalization has caused young people to shrug off the pandemic, says Mike Ryan, executive director of WHO emergencies program. "We collectively have been living in a world where we've tried to convince ourselves that this disease is mild in young people and more severe in older people, and that's where the problem is,". It has also been reported the virus can be passed around with a person being asymptomatic. This poses and even greater risk for the prison population as close living quarters allows for the virus to be spread undetected among the prison population as currently only symptomatic prisoners only are being isolated,

As already demonstrated by the death of several BOP prisoners, staff and the growing numbers of infected persons in BOP facilities across the country, prison is a safe not place for anyone to be during this pandemic. It has previously been reported by the Department of Justice's office of the Inspector General found that staffing prisoners with qualified healthcare workers is a challenge for the BOP and this can pose

(5) a great challenge for the healthcare field when it come to efficient healthcare for inmate at Critically hit facilities such as FCI Danbury a large numbers of healthcare workers are already in scarcity. Encouraged "Social distancing" and increased hygiene to prevent COVID-19 Unfortunately cannot be actively practiced in many BOP facilities utilizing Close quarters and dormitory housing, which makes it impossible to accomplish adequate distancing between prisoners. Inmates have instead been subjected to harsh Conditions being placed into 14-day quarantine by Confining them to their cells or living quarters. Consideration to home Confinement would be favorable to the BOP as he is an ideal Candidate to carry out a home Confinement sentence. Cleon Clarke is a recent transfer to FCI Danbury as of December 12, 2019 with a total of 13 points keeping him at a low status and self surrendering to the Federal Court house. Home Confinement for Cleon Clarke Inmate #78387054 would be beneficial to the BOP for the remainder of his sentence under these Circumstance factors such as

1. A first time violent offense 2. Self Surrendered 3. Completion of Several Recidivism Reduction Programs, as well as demonstrating model reform citizen behavior while in BOP custody, should be factors taken into consideration for immediate release into home Confinement in order to protect the health of all inmates as well as morals and integrity of the BOP for taking into Consideration humanity as a whole.

