UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>CLEON CLARKE,<br><br>                      Defendant. |

No. 16-cr-781 (RJS)
<u>ORDER</u>

RICHARD J. SULLIVAN, Circuit Judge:

    Before the Court is Defendant Cleon Clarke's pro se motion for a compassionate release, which he makes pursuant to 18 U.S.C. § 3582(c)(1)(A) in light of the COVID-19 pandemic, his medical conditions, and his post-conviction rehabilitation. (Doc. No. 59.) For the reasons discussed below, Clarke's motion is respectfully DENIED.

## I.     Background[1]

    In 2014, Clarke participated in an armed robbery of a Massachusetts company that restocked ATM machines with cash. (PSR at ¶ 11.) As part of the robbery, Clarke and his co-defendant, Garfield Green, travelled from the Bronx to Massachusetts, bringing with them at least one firearm. (*Id.* at ¶ 12.) When they arrived at the company's parking lot, Clarke "pushed the gun against the back of [an employee's] head," forced the employee into a van, and locked him in, while one of Clarke's co-conspirators grabbed bags of cash. (*Id.* ¶ 13.) The parties then drove to the Bronx, where they divided more than $250,000 among themselves. (*Id.*)

    A grand jury subsequently charged Clarke with (1) conspiracy to commit an armed robbery in violation of 18 U.S.C. § 1951; (2) armed robbery in violation of 18 U.S.C. §§ 1951 and 2; and

---

[1] The facts, which are undisputed, are largely taken from the Presentence Report ("PSR") prepared in connection with Clarke's sentencing, as well as the submissions of the parties.

(3) brandishing a firearm in furtherance of that robbery in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. (*Id.* at ¶¶ 2–4.) Clarke eventually pleaded guilty to the substantive robbery count pursuant to a plea agreement with the government. (*Id.* at ¶ 6.)

At Clarke's sentencing on October 27, 2017, the Court calculated Clarke's Guidelines range to be 63 to 78 months' imprisonment, based on a total offense level of 25 and a criminal history category of II. (Sent. Tr. at 6–7.) In making its sentencing determination, the Court considered Clarke's "many good qualities," including that he had "made a difference in the lives of the people closest to him." (*Id.* at 34–35.) The Court also noted the nature of the offense, emphasizing that Clarke participated in a "serious robbery, in broad daylight, at gunpoint, that could have resulted" in injury or death to innocent persons. (*Id.* at 35.) Moreover, the Court observed that the victim's "trauma . . . is still very real," and that the stealing of more than $250,000 was, in itself, a serious offense. (*Id.* at 35–36.) The Court further highlighted that this crime was "not an isolated occurrence," but rather "one of a series of robberies" perpetrated by Clarke with firearms. (*Id.* at 36.) Ultimately, the Court explained that "but for the plea agreement here, [Clarke] would have been facing a lot more time." (*Id.*) The Court ultimately imposed an above-Guidelines sentence of 90 months' imprisonment based on "the other robberies, . . . the fact that [Clarke was] the gunman," and the fact "that there are multiple occasions that we know about in which [he] used a gun." (*Id.* at 37.) Clarke is currently incarcerated at Danbury FCI, and his projected release date is April 30, 2023. *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited May 13, 2021).

On May 14, 2020, Clarke filed an administrative request with the Bureau of Prisons ("BOP") seeking compassionate release and home confinement, both of which were denied. (Doc. No. 60-1 at 2–3.) On December 21, 2020, Clarke filed a pro se motion with this Court requesting

2

compassionate release under 18 U.S.C. § 3582. (Doc. No. 59 at 1.) Clarke based his request on the particularly poor conditions at Danbury and his assorted medical conditions, which included high blood pressure, the fact that he "carries" the sickle cell trait, and several recent "medical episodes" in which he experienced "debilitating headaches" and "chronic neck[,] ear[,] and dental pain." (*See id.* at 2, 5–6; Doc. No. 63 at 1–5.) According to Clarke, these conditions made him more vulnerable to a severe case of COVID-19. (*Id.*) The government opposed Clarke's request on the ground that there was insufficient evidence that his medical conditions increased his risk of a severe case of COVID-19 and that the seriousness of his crimes made release inappropriate in any event. (Doc. No. 60 at 3–5.) Later, Clarke, through counsel, filed a reply. (Doc. No. 63.)

## II.     Analysis

A court "may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Roberts*, No. 18-cr-528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020). Section 3582(c)(1)(A) provides one such exception; it permits a court to reduce a defendant's sentence where (1) "extraordinary and compelling reasons warrant such a reduction," and (2) such relief would be consistent with both the objectives of sentencing set forth in 18 U.S.C. § 3553(a) and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Although courts have recognized that the COVID-19 pandemic poses a substantial risk to inmates, *see, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *United States v. Nwankwo*, No. 12-cr-31 (VM), 2020 WL 2490044, at *1 (S.D.N.Y. May 14, 2020), inmates seeking compassionate release must nevertheless demonstrate that they are particularly vulnerable in the event they were to contract the virus. *See, e.g.*, *United States v. Felix*, No. 12-cr-322 (RJS), 2020 WL 4505622, at *2 (S.D.N.Y. Aug. 4, 2020) ("[C]ourts have consistently recognized that

the pandemic itself – without more – does not present extraordinary and compelling circumstances warranting a compassionate release."); *United States v. Hamed*, No. 17-cr-302-1 (KPF), 2020 WL 3268657, at *3 (S.D.N.Y. June 17, 2020) ("[T]he risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease.").

Clarke falls short of satisfying his threshold burden. First, he does not sufficiently establish that simply carrying the sickle cell trait increases the risk of a severe illness from COVID-19. Thus far, the CDC has identified only sickle disease, not merely carrying the trait, as increasing this risk. *See People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 13, 2021). And while it is true that some medical professionals have taken a more cautious view (Doc. No. 63 at 2), the evidence at this point is insufficient to meet the burden of proof required for compassionate release. Clarke's high blood pressure, which the CDC lists as a condition that could "possibly" increase the risk of severe illness, and his assorted complaints of headaches, neck, ear, and dental pain, which have no known correlation with severe reactions to COVID-19, do not alter that conclusion. *See People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 13, 2021). Moreover, though Clarke highlights the multiple outbreaks that took place at Danbury earlier in the pandemic (Doc. No. 59 at 2; Doc. No. 63 at 5), BOP's public records not only reflect that no inmates at Danbury currently have "confirmed active cases" of the virus, but also show that 327 inmates have already been fully inoculated against COVID-19. *See COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited May 13, 2021). Clarke has thus failed to establish

4

that the conditions at Danbury, coupled with his own medical conditions, are so severe that they warrant a finding of "extraordinary and compelling" circumstances.

But even if Clarke could meet his threshold burden, countervailing factors would nevertheless compel denial of his motion. As noted above, before granting a motion for compassionate release, the Court must assess the § 3553(a) sentencing factors to determine "whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *United States v. Ogarro*, No. 18-cr-373-9 (RJS), 2020 WL 5913312, at *2 (S.D.N.Y. May 13, 2020) (quoting *United States v. Ebbers*, No. 02-cr-1144 (VEC), 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020)). Those sentencing factors include (1) "the nature and circumstances of the offense," (2) "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a).

In this case, the § 3553 factors weigh heavily against granting Clarke's request for a compassionate release. As the Court emphasized at sentencing, Clarke's crime was serious – involving "robb[ing] another human being at gunpoint" and "putting a gun to his head" – and was part of a series of other armed robberies. (Sent. Tr. at 36.) Indeed, the seriousness of Clarke's conduct prompted the Court to impose an above-Guidelines sentence. And though the Court applauds Clarke's nearly perfect prison record and his completion of numerous educational programs while he's been in custody, the Court is fully persuaded that reducing Clarke's sentence at this point, about two years before he is scheduled to finish his sentence, would "send a dangerous message" by undermining the objectives of sentencing that the Court identified during the original

sentencing proceeding. (Sent. Tr. at 37–38); *see also United States v. Sanchez*, No. 08-cr-789 (RJS), 2020 WL 4742916, at *3 (S.D.N.Y. June 17, 2020).[2]

### III. Conclusion

For the reasons set forth above, Clarke's motion for compassionate release is DENIED.

SO ORDERED.

Dated: May 14, 2021
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

---

[2] To the extent that Clarke is also seeking home confinement, this Court does not have the authority to order it. Although the CARES Act authorizes the BOP to permit prisoners to finish the remainder of their sentences under home confinement, this remedy is exclusively within the discretion of the BOP, meaning that the Court lacks the authority to order home confinement. *See* Pub. L. No. 116-136, § 12003(b)(2) (2020); 18 U.S.C. § 3624(c)(2); *United States v. Corley*, No. 18-cr-454-3 (KPF), 2021 WL 242451, at *4 n.7 (S.D.N.Y. Jan. 25, 2021).